IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DON NORTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 15-3276 |
| ) | |
| CITY OF SPRINGFIELD, ) | |
| ) | |
| Defendant ) | |

OPINION

RICHARD MILLS, United States District Judge:

The Plaintiffs claim that § 131.06(a)(2)(a) of the Springfield Municipal Code violates the First Amendment and move for summary judgment.

I.   INTRODUCTION

On September 22, 2015, the Springfield City Council amended its "aggressive panhandling" ordinance, adding a clause that made it unlawful for any individual to "Panhandl[e] while at any time before, during, or after the solicitation knowingly approaching within five feet of the solicited person." Springfield Muni. Code § 131.06(a)(2)(a) ("the Ordinance").

Following the repeal of § 131.06 on February 23, 2017, Defendant City of Springfield filed a motion for summary judgment on mootness grounds. Because the Plaintiffs' Complaint sought an award of nominal damages for an alleged

1

violation of their First Amendment rights, the Court denied the Defendant's summary judgment motion. The Plaintiffs now seek summary judgment on their claim that the Ordinance violates the First Amendment.

## II. FACTUAL BACKGROUND

Section 131.06 of the Springfield Municipal Code (titled "General Offenses") defined "panhandling" as making a "vocal appeal[] . . . for immediate donation[] of money or other gratuity." Springfield Muni. Code § 131.06(a)(1). The Code prohibited what it defined as "aggressive panhandling" anywhere within the City. § 131.06(d). Historically, the Code defined intimidating behaviors such as "using profane or abusive language . . . which would cause a reasonable person to be fearful of his safety;" "touching the solicited person without the solicited person's consent;" and "blocking the path of the person solicited" as "aggressive panhandling." § 131.06(a).

On September 22, 2015, the City Council amended § 131.06(a)(2)(a) of the Code, adding the italicized language to the definition of aggressive panhandling: "panhandling while at any time before, during, or after the solicitation *knowingly approaching within five feet of the solicited person or intentionally* touching the solicited person without the solicited person's consent." §131.06(a)(2)(a) (emphasis added).

Section 131.06(f) subjected anyone who violates the Ordinance to a fine of "not less than $25 nor more than $100, or public or community service of not less than eight hours nor more than 40 hours for each violation." § 131.06(f).

Plaintiffs Don Norton, Karen Otterson and Jessica Zenquis, who regularly panhandle on the public sidewalks in the City of Springfield, filed their Complaint and motion for a preliminary injunction on September 25, 2015. After the City agreed to delay the enforcement of the amendment to § 131.06, the Court allowed the Parties' stipulation to withdraw the preliminary injunction motion on December 15, 2015. Although the Plaintiffs state that the Ordinance's ban on panhandling while "approaching within five feet" of the person being solicited was never put into effect, it actually was in effect from September 22, 2015 to December 15, 2015, when the City agreed not to enforce the Ordinance.

On February 23, 2017, the City repealed the Ordinance regulating panhandling in the City in its entirety, replacing it with a new Ordinance--§ 131.11 of the Municipal Code—which regulates all forms of solicitation (not just panhandling) on the public sidewalks in Springfield. Although the Plaintiffs' claims for injunctive relief are moot, the Plaintiffs seek declaratory relief as a predicate to an award of nominal damages and attorney's fees.

The City identified the following as its rationales for enactment of the Ordinance: "public safety," "privacy," "orderly regulation of commercial

3

endeavors," "protecting listeners from unwanted communication" and "specific guidance to law enforcement authorities serves the interest in evenhanded application of the law."

The City identified Springfield Police Sergeant Robert Davidsmeyer as an expert witness to testify concerning the City's safety rationales for the Ordinance. Davidsmeyer opined that "it is advisable to maintain a reactionary gap of six feet or more between two persons of unknown intent in order to maintain personal safety." In reaching this conclusion, Davidsmeyer did not distinguish between individuals engaged in panhandling and individuals engaged in other types of interactions that occur on public sidewalks. Rather, Davidsmeyer believes it is advisable to maintain a six-foot reactionary gap between any citizen and "any person they don't know." Davidsmeyer testified that the risks posed by unknown persons' approaching within five feet of one another are the same whether the people are panhandling, passing out leaflets, selling something or protesting. He agreed there is nothing inherently dangerous about people approaching other people for the purpose of requesting a donation. However, Davidsmeyer suggested that a person approaching another person could be dangerous until the person's intent was clear.

Davidsmeyer testified that the enforcement of the state disorderly conduct statute would be one way to adequately respond to inappropriate behavior that

4

occurs while someone is engaged in street solicitation. However, Davidsmeyer did not know how effective the statute would be in deterring inappropriate behavior associated with panhandling.

The Plaintiffs allege the City did not identify any testimony, evidence, studies or data that supported a need for the imposition of the five-foot buffer zone between people who panhandle and the individuals from whom they are requesting donations. Moreover, the City did not identify any evidence showing that "allowing individuals who panhandle to approach within five feet of the person solicited causes any harm to the City's interests." The City disputes these assertions and points to Davidsmeyer's testimony. Davidsmeyer testified that while two friends might be comfortable being within three feet of each other when talking, individuals who do not know each other should generally maintain a reactionary zone of six feet due to safety concerns.

The City did not identify any incidents of harm to the City's interests resulting from the non-enforcement of the Ordinance, or any evidence (police reports, complaints, data or testimony) supporting the existence of any harm to the City's interests resulting from the non-enforcement of the Ordinance. The period of non-enforcement of the Ordinance extended from December 15, 2015, when the Court formally enjoined its enforcement to February 23, 2017, when the City formally rescinded it.

The City did not consider enacting any less restrictive alternatives to the restrictions imposed under the Ordinance.

The City alleges the Plaintiffs have not produced any evidence that they would have been inhibited in delivering their message, nor evidence that they would have been required to "shout" their requests "from a distance" of five feet, as alleged in paragraph 12 of their Complaint. Relying on the declarations of Don Norton and Karen Otterson, the Plaintiffs dispute the assertion. Norton and Otterson say they feared being ticketed or arrested for violation of the Ordinance and constrained their otherwise lawful panhandling activities for those reasons.

The City also alleges Davidsmeyer testified that persons distributing leaflets would demonstrate a different apparent intention that may not require a reactionary gap. The Plaintiffs dispute this assertion, noting Davidsmeyer had earlier agreed that "it's advisable for all citizens to maintain a reactionary gap of six feet or more between themselves and any person they don't know." He further testified that would apply equally to someone who is panhandling as to someone who is trying to sell you something. When asked about leaflets, Davidsmeyer testified, "I guess you could apply to that also." Davidsmeyer went on to discuss the intent of the person distributing the leaflet and how, if the individual knows the intent of the distributor, the six-foot reactionary gap might not be necessary.

The Plaintiffs seek the entry of summary judgment on their claim that § 131.06(a)(2)(a) of the Springfield Municipal Code's prohibition on "panhandling while at any time before, during or after the solicitation knowingly approaching within five feet of the solicited person" violates the First Amendment. The Plaintiffs claim that the undisputed facts establish that the Ordinance is a content-based regulation that curtails speech in a traditional public forum and that the Ordinance is not narrowly tailored to advance a compelling state interest.

The City contends the Plaintiffs' constitutional challenge to the Amendment to the City's now-repealed panhandling Ordinance is moot. Alternatively, the City alleges the Amendment, which prohibited panhandlers from knowingly approaching within five feet of their target without permission did not violate the First Amendment because it was a reasonable time, place and manner restriction that was content neutral, narrowly tailored and left open alternative means of communication.

### III. DISCUSSION

A. <u>Standard of review</u>

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child*

*Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

    B. Mootness

The City alleges the Plaintiffs' motion is moot on the basis that the repeal of a challenged statute renders the challenge moot. The Plaintiffs acknowledge their claims for injunctive relief are moot but seek declaratory relief as a predicate to an award of nominal damages and attorney's fees.

The City claims that the Ordinance was never put into effect. The Plaintiffs were never cited, nor were their actions ever constrained by any threat of citation.

The record shows that the amended Ordinance was passed on September 22, 2015. On December 15, 2015, the Parties agreed that the Ordinance would not be enforced. The Court entered an Order on that date pursuant to the Parties stipulated agreement. For almost three months, therefore, the Plaintiffs were subject to the law and at risk of having it enforced against them. Plaintiffs Norton

and Otterson submitted Declarations, wherein they both say they continued to panhandle during that period but were fearful of being ticketed for violating the five-foot restriction. Therefore, they took measures to avoid coming within five feet of pedestrians on the public way. Norton and Otterson say that over the years, they each have been ticketed a dozen or more times for violating § 131.06 of the Springfield Municipal Code.

The United States Court of Appeals for the Seventh Circuit has recognized that the repeal of a law does not necessarily moot a claim for damages. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 804 (7th Cir. 2016). "So long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Holder v. Illinois Dept. of Corrections*, 751 F.3d 486, 498 (7th Cir. 2014) (quoting *Buckhannon Board & Care Home, Inc. v. W.Va. Dept. of Health and Human Resources*, 532 U.S. 598, 608-09 (2001)). The act of "refrain[ing] from protected speech in response to the City's unconstitutional ordinances . . . describes an injury-in-fact." *Six Star Holdings*, 821 F.3d at 803 (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)).

Based on their representations, the Plaintiffs did refrain from protected speech because of the threat of enforcement of the Ordinance. This is sufficient to constitute an injury-in-fact, even though the City eventually repealed the law.

The Court further concludes that Plaintiffs' claim for nominal damages means that the City's mootness argument fails. The Seventh Circuit has observed that "nominal damages are appropriate when a plaintiff's rights are violated but there is no monetary injury." *Six Star Holdings*, 821 F.3d at 805.

Because this is a case that would support an award of nominal damages, the Court concludes that the City's argument as to mootness must be rejected. Accordingly, the Court will proceed to examining the substance of the Ordinance under the First Amendment.

    C. <u>Ordinance and the First Amendment</u>

(1)

In drafting the Ordinance, the City relied on the United States Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000). The Court in *Hill* considered the constitutionality of a Colorado statute which made it "unlawful, [within 100 feet of the entrance to a health care facility] to knowingly approach within eight feet of another person, without that person's consent, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person." *Id*. at 707. The Supreme Court found that the regulation was "content neutral." *See id*. at 725. It did not restrict or prohibit "either a particular viewpoint or any subject matter that may be discussed by a speaker." *Id*. at 723. Rather, the regulation established a "minor

place restriction on an extremely broad category of communications" and applied "equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries." *Id*. The Court determined the regulation was a "valid time, place, and manner regulation" because it is "narrowly tailored." Moreover, it served government interests that are "significant and legitimate." The Court emphasized that individuals attempting to enter health care facilities "are often in particularly vulnerable physical and emotional conditions" and concluded that the restriction is "reasonable and narrowly tailored." *Id*. at 729-30.

The Ordinance in this case differs significantly from that at issue in *Hill*. While the regulation in *Hill* addressed only areas within "100 feet" of the entrances to health care facilities, the Ordinance in this case applied to all requests for donations anywhere in the City. The restriction on "approaching within five feet" for the purpose of requesting a donation applied citywide.

Another difference between the two regulations is that the one at issue in *Hill* was content-neutral and prohibited individuals from approaching to within eight feet of one another within the 100-foot zones regardless of what they sought to discuss. *See Hill*, 530 U.S. at 708 (noting the statute does not "place any restriction on the content of any message that anyone may wish to communicate to anyone else, either inside or outside the regulated areas."). Conversely, the regulation in this case is content-based because it applied only to a particular type

of communication—a request for "an immediate donation." The regulation did not prohibit individuals from approaching within five feet of one another to communicate any other message or engage in any other kind of solicitation. Accordingly, the City's argument that the amendment is not content-based is without merit.

The Colorado regulation at issue in *Hill* was also different in that it was aimed at protecting a "captive audience"—people who were seeking to enter health care facilities for the purpose of obtaining treatment—who could not simply walk away from or avoid unwanted communication. *See Hill*, 530 U.S. at 718. The Court stated, "The recognizable privacy interest in avoiding unwanted communication varies widely in different settings. It is far less important when strolling through Central Park than when in the confines of one's home, or when persons are powerless to avoid." *Id.* at 716 (internal quotation marks omitted). The Ordinance here applies on all of the City sidewalks, parks and public ways in Springfield. Accordingly, it is not directed at protecting a "captive audience" from unwanted communication. The individual can simply avert his eyes or walk away to avoid an unwanted request for "an immediate donation."

The City's argument that the Ordinance is not a "regulation of speech" but is a "regulation of activity" with an "incidental effect" on speech is not persuasive. The Ordinance was not a generally applicable regulation of conduct. Its

12

application hinged on the message communicated. An individual could not request an immediate donation while approaching within five feet of another person. He or she could communicate any other message. Because one would have to examine the content of the communication to determine if a violation occurred, the Ordinance is content-based. In the previous case involving some of the same parties, the Seventh Circuit found that a regulation that applies solely to panhandling must be analyzed as a "content based" law that is subject to strict scrutiny under *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), given that it "regulates because of the topic discussed." *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015) (quoting *Reed* at 227-28). Accordingly, the Court is not persuaded by the City's argument that the Ordinance should be upheld under a "time, place, and manner" restriction of behavior analysis.

The Springfield Ordinance did not prohibit all citizens from approaching within five feet of one another regardless of their reason for doing so. It was a crime to approach within five feet of another person only if one made a "request for an immediate donation." This was the only form of solicitation that was a crime under the Ordinance. The Ordinance did not prohibit an individual from approaching within five feet of another to pass out a leaflet, to ask for a signature, to say hello, to engage in prayer or proselytization, to protest, to sell a product, to advertise a service, or to request a future donation. Because the Ordinance

distinguished these forms of communication from a "request for an immediate donation," it was a content-based regulation of speech and not a content-neutral regulation of conduct.

(2)

Because it is a content-based restriction, the Ordinance is subject to strict scrutiny. "Content-based" regulations are presumptively invalid under the First Amendment. *See Reed*, 135 S. Ct. at 2227. In order to satisfy strict scrutiny, the Government must show that the regulation of speech is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

The City identified five interests it claimed are served by the Ordinance: (1) "public safety," (2) "protecting listeners from unwanted communication;" (3) "privacy;" (4) "[providing] specific guidance to law enforcement authorities [to promote] even-handed application of the law;" and (5) "orderly regulation of commercial endeavors." However, the City is unable to show that the Ordinance is necessary to address any of these interests.

The City did not produce any evidence of public safety being compromised by a panhandler approaching within five feet of someone. Sergeant Davidsmeyer was not "aware of any injuries having resulted from a person asking for a donation approaching within five feet of another person." Davidsmeyer testified the risks of

14

an unknown person approaching within five feet of another are the same whether the unknown individuals are panhandling or engaged in another activity. Accordingly, the City's interest in "public safety" does not amount to a compelling interest sufficient to justify an Ordinance's content-based restriction.

It is also not a compelling state interest for a government to protect listeners from "unwanted communication" and to protect unwilling listeners' privacy interests in a public forum. "[T]he mere presumed presence of unwitting listeners or viewers does not serve automatically to justify curtailing all speech capable of giving offense." *Cohen v. California*, 403 U.S. 15, 21 (1971). The Supreme Court further stated that the government's authority "to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Id*.

More recently, the Supreme Court noted that areas such as the public streets and sidewalks occupy a "special position in terms of First Amendment protection." *See McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014). Accordingly, "the government's ability to restrict speech in such locations is very limited." *Id*.

Of course, the Court recognizes that many individuals do not welcome a solicitation or request from a stranger for an "immediate donation." However, this does not mean that the regulation is necessary or that the government interest is

compelling. The individual in most cases can simply avert his eyes or walk away if he wishes to avoid such an encounter.

The City has failed to show that it has a compelling interest in promoting an individual's privacy interests in a public forum or "protecting unwilling listeners from unwanted communication" sufficient to justify the Ordinance's restrictions.

Another justification offered by the City is to provide clear guidance to law enforcement authorities to promote even-handed application of the law. The City does not explain how the Ordinance provides clear guidance to law enforcement authorities. Although bright line rules have merit in some circumstances, the Court believes it would be very difficult for police officers routinely to monitor sidewalk encounters between individuals and determine whether anyone unlawfully "approached" within five feet of someone else. The officer would also have to determine whether the approaching individual made a request for an "immediate donation," as opposed to saying something else. Accordingly, the Court does not believe the Ordinance would provide "specific guidance" to promote "even-handed enforcement of the law." Even if it did, however, "the prime objective of the First Amendment is not efficiency." *McCullen*, 134 S. Ct. at 2540. Therefore, providing guidance to law enforcement to promote even-handed application of the law is not a compelling a government interest.

The City also alleges that the "orderly regulation of commercial endeavors" is a compelling government interest served by the challenged part of the Ordinance. However, the part of the Ordinance at issue does not apply to those who sell items or solicit business. It applies only to those individuals who request immediate donations. Because the Ordinance does not regulate commercial endeavors, the City's interest in the "orderly regulation of commercial endeavors," does not provide a compelling government interest sufficient to justify the Ordinance's content-based regulation of requests for donations.

Because it has not identified any compelling government interest served by the Ordinance, the City is unable to show that the Ordinance did not violate the First Amendment.

(3)

The Court has already determined that the Ordinance is a content-based regulation that is not necessary to serve any compelling Government interest. Therefore, the Court need not consider whether the Ordinance is "narrowly tailored" to serve any of the City's interests. Even assuming the City could show that a compelling interest exists which would justify the Ordinance, it is apparent that the Ordinance is not "narrowly tailored" to serve any of the City's interests.

A City-wide ban on "approaching within five feet of" pedestrians while panhandling is not narrowly tailored because there a number of alternative ways

17

for the City to address the particular harms at issue. Many of these alternatives are included in the Springfield Municipal Code, which prohibits various types of "aggressive" panhandling. The enforcement of the state disorderly conduct statute is another potential way to address some of the harms associated with panhandling. Because there are "alternative measures" that burden less speech and could provide adequate means for law enforcement to respond to the harms posed by panhandlers, the Court concludes that the Ordinance is not narrowly tailored to address those harms.

## IV. CONCLUSION

In the Complaint, the Plaintiffs sought a declaration that § 131.06(a)(2)(a) violates their First Amendment rights and an award of nominal damages for the violation. Because the Ordinance was in effect almost three months and the Plaintiffs refrained from protected speech due to the threat of enforcement, the Plaintiff's motion is not moot. The Court further finds that the Ordinance is a content-based restriction. Because the City has not shown that the Ordinance is necessary to serve a compelling interest and is narrowly drawn to achieve that end, the City has not shown that §131.06(a)(2)(a) of the Springfield Municipal Code is constitutional.

Accordingly, the Plaintiffs are entitled to summary judgment on their claim that § 131.06(a)(2)(a) of the Springfield Municipal Code's prohibition on

18

"panhandling while at any time before, during or after the solicitation knowingly approaching within five feet of the solicited person" violates the First Amendment.

<u>Ergo</u>, the Plaintiffs' Motion for Summary Judgment [d/e 29] is ALLOWED.

Summary judgment is hereby entered on the Plaintiffs' claim that § 131.06(a)(2)(a) of the Springfield Municipal Code's prohibition on "panhandling while at any time before, during, or after the solicitation knowingly approaching within five feet of the solicited person" violates the First Amendment.

ENTER: August 17, 2018

FOR THE COURT:

       /s/ *Richard Mills*
Richard Mills
United States District Judge